UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EDWARD ALEXANDER MCDOWELL, )
                                                                      )
    Plaintiff,                            )
                                                                      )
v.                                                            )    Case No.:

TOTAL DISTRIBUTION INC.,               )
a PEOPLE SERVICES, INC Company         )
f/k/a THE GRIMES COMPANIES,            )
                                        )
    Defendant.                         )
_____/

**PLAINTIFF'S COMPLAINT WITH DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, EDWARD ALEXANDER MCDOWELL ("Plaintiff" or "McDowell"), and files his Complaint against Defendant, TOTAL DISTRIBUTION INC., a PEOPLE SERVICES, INC Company f/k/a THE GRIMES COMPANIES ("Defendant" or "Grimes"), and in support he states the following:

**NATURE OF THE CLAIMS**

1. This is an action for monetary damages, pursuant to Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§12101 *et seq.* ("ADA"); the Family and Medical Leave Act of 1993, 29 U.S.C. §§2601, *et seq.* ("FMLA"); and the Florida Civil Rights Act of 1992, Fla. Stat. §§760.10, *et seq.* ("FCRA"), to redress Defendant's unlawful employment practices against Plaintiff, including discrimination, harassment, and retaliation because of Plaintiff's disability and interference with Plaintiff's lawful use of the FMLA leading to his unlawful termination.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under the ADA and the FMLA.

3. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law and the Florida Civil Rights Act of 1992 pursuant to 28 U.S.C. §1367(a).

4. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action, including Defendant's unlawful employment practices alleged herein, occurred in this District.

## THE PARTIES

5. Plaintiff, McDowell, is a citizen of the United States, and is and was at all times material, a resident of the State of Florida residing in Duval County, Florida.

6. Defendant Grimes is a Foreign For Profit Corporation with its principal place of business in Canton, Ohio.

7. Defendant does business in this judicial district and Plaintiff worked for Defendant at its 600 Ellis Road, N., Jacksonville, FL 32254 location.

8. Defendant is an employer as defined by the laws under which this action is brought and employs the requisite number of employees.

## PROCEDURAL REQUIREMENTS

9. Plaintiff has complied with all statutory prerequisites to filing this action.

10. On August 28, 2018, Plaintiff timely dual-filed a claim with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"),

against Defendant, satisfying the requirements of 42 U.S.C. § 2000e-5(b) and (e) based on disability and retaliation.

11. Plaintiff's EEOC Charge was filed within three hundred days after the alleged unlawful employment practices.

12. On August 28, 2019, the FCHR issued to Plaintiff a Notice of Determination.

13. On December 4, 2019 the EEOC administratively adopted the position of the FCHR and issued to Plaintiff a Dismissal Notice of Rights.

14. This Complaint was filed within ninety days following Plaintiff's receipt of the EEOC's Dismissal and Notice of Rights.

## **FACTUAL ALLEGATIONS**

15. Plaintiff was employed by Defendant for approximately twelve (12) years in a full-time capacity.

16. Plaintiff worked for Defendant as a Quality Manager at the time of his unlawful termination.

17. Plaintiff's job duties included but were not limited to overseeing Defendant's quality policies, managing the quality control functions in each of Defendant's various departments, insuring employees were performing their respective duties in line with Defendant's policies, maintaining Defendant's Continuous Improvement Software program, and selecting, implementing, and maintaining Defendant's LogiMax (warehouse management system) system.

18. While employed by Defendant, Plaintiff satisfactorily performed the job requirements of his position.

19. Plaintiff is a disabled male.

20. At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the ADA. Plaintiff has an actual disability, has a record of being disabled, and/or is perceived as being disabled by Defendant.

21. Plaintiff experienced symptoms related to his disability for some time. Over the years, Plaintiff expressed to Tommy Grimes, Defendant's former Owner, Neil Porter, Defendant's former President, Ike Sherlock, President, and Kelsey Griffin, Human Resources Manager, that he had difficulty walking thus, putting Defendant on notice of his disability.

22. Defendant was further on notice of Plaintiff's disability because Plaintiff walked with a visible limp. Plaintiff's symptoms became so pronounced that at times he was only able to walk 200 feet without stopping briefly to rest his legs. Additionally, at times Plaintiff required the use of a golf cart to conduct warehouse tours because of the pain in his legs and difficulty walking.

23. Despite its knowledge of Plaintiff's disability and/or perceived disability at no time did Defendant offer or discuss the possibility of FMLA leave with Plaintiff.

24. In early 2018 due to the increasing severity in his symptoms, Plaintiff sought medical treatment with Dr. James W. Fetchero of Family Medical Centers.

25. Following further testing, in April 2018, Plaintiff was diagnosed with peripheral arterial disease.

26. Due to the nature of Plaintiff's diagnosis, Dr. Fetchero referred Plaintiff to a vascular surgeon for further evaluation. Plaintiff promptly emailed Mr. Sherlock to notify him of the same.

27. Plaintiff sought treatment with Dr. Sara Clark, a vascular surgeon working at St. Vincent's Hospital Medical Center in Jacksonville, Florida.

28. Initially, Dr. Clark scheduled Plaintiff for surgery on June 8, 2018. Plaintiff promptly notified Mr. Sherlock and Mr. Griffith of his upcoming surgery.

29. However, on June 5, 2018 Plaintiff's symptoms worsened and he began to slur his speech while at work. Mr. Sherlock and Mr. Griffin witnessed Plaintiff's slurred speech and directed Plaintiff to go home for the day to rest.

30. Plaintiff complied and went home to rest. After some rest, Plaintiff felt better and continued working full time from home. Plaintiff remained in constant contact, primarily by phone, with Mr. Griffith keeping him apprised of the situation.

31. On June 8, 2018 Plaintiff arrived at St. Vincent's Hospital Medical Center for his scheduled surgery.

32. Upon further pre-operative testing, Plaintiff's surgery was cancelled and Dr. Clark ordered Plaintiff to the Emergency Room for evaluation and treatment as she feared he had suffered a stroke or a heart attack.

33. Plaintiff underwent additional testing and was diagnosed with sleep apnea and diabetes.

34. After receiving additional treatment, Plaintiff was well enough to undergo his previously scheduled peripheral arterial disease surgery and did so on June 15, 2018.

35. Plaintiff contacted Mr. Griffith when his surgery was over to report it was a success. Mr. Griffith directed Plaintiff to "just stay home" and further commented that "Ike [Sherlock] wants you to stay home."

36. Six days later, on June 21, 2018 Plaintiff was medically cleared to return to work without any restrictions.

37. Plaintiff provided his return to work notice to Mr. Griffith.

38. To Plaintiff's shock Defendant refused to allow Plaintiff to return to work at its 600 Ellis Road, N., Jacksonville, FL 32254 location. Instead, Defendant forced Plaintiff to continue working from home.

39. Despite the fact that Plaintiff was released to return to work without restriction, Mr. Griffith stated explicitly to Plaintiff "Ike wants you to just stay home and rest."

40. Per Defendant's directive, Plaintiff worked from home following his June 21, 2018 medical release.

41. Mere weeks later, on July 30, 2018 Mr. Griffith called Plaintiff and directed him to meet in the parking lot of Defendant's West Side Industrial Park – a warehouse Defendant leased.

42. Plaintiff arrived at the West Side Industrial Park and was met in the parking lot by Mr. Sherlock and Mr. Griffith.

43. Mr. Griffith approached Plaintiff and immediately terminated him due to his disability and in retaliation for engaging in protected activity citing the pretextual reason of "job elimination."

44. However, Plaintiff's position was not eliminated as following his unlawful termination, Defendant placed Kimberly Swanson (non-disabled) into Plaintiff's role.

45. Plaintiff has been damaged by Defendant's illegal conduct.

46. Plaintiff has had to retain the services of undersigned counsel and has agreed to pay said counsel reasonable attorneys' fees.

## Count I: Disability Based Discrimination in Violation of the ADA

47. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-46 above.

48. At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the ADA.

49. Plaintiff has an actual disability, has a record of being disabled, and/or is perceived as being disabled by Defendant.

50. Defendant is prohibited under the ADA from discriminating against Plaintiff because of Plaintiff's disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

51. Defendant violated the ADA by unlawfully terminating and discriminating against Plaintiff based on his disability.

52. Defendant intentionally discriminated against Plaintiff on the basis of his disability.

53. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

54. Defendant's unlawful conduct in violation of the ADA is outrageous and malicious, intended to injure Plaintiff, and has been done with conscious disregard of Plaintiff's civil rights, entitling him to an award of exemplary and/or punitive damages.

## Count II: Retaliation in Violaiton of the ADA

55. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-46 above.

56. Plaintiff engaged in protected activity under the ADA while employed by Defendant.

57. Defendant engaged in intentional retaliation against Plaintiff for his participation in protected activity.

58. Defendant's conduct violated the ADA.

59. Defendant intentionally retaliated against Plaintiff for engaging in protected activity under the ADA by terminating Plaintiff's employment.

60. Defendant's conduct violates the ADA.

61. Defendant's discriminatory conduct, in violation of the ADA, has caused Plaintiff to suffer a loss of pay, benefits, and prestige for which he is entitled to damages.

62. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling him to compensatory damages.

63. Defendant has engaged in discriminatory practices with malice and reckless indifference to Plaintiff's federally protected rights, thereby entitling Plaintiff to punitive damages.

## Count III: Interference in Violation of the FMLA

64. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-46 above.

65. Plaintiff was an employee eligible for protected leave under the FMLA.

66. Defendant is and was an employer as defined by the FMLA.

67. Defendant refused to allow Plaintiff to apply for FMLA leave, despite the fact that Plaintiff was an eligible employee with a qualifying condition.

68. Defendant interfered with Plaintiff's lawful exercise of his FMLA rights.

69. Defendant's actions were willful, knowing, and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

70. Plaintiff was injured due to Defendant's willful violations of the FMLA, to which he is entitled to legal relief.

**Count IV: Handicap Based Discrimination in Violation of the FCRA**

71. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1-46 above.

72. Plaintiff was a qualified individual with a handicap under the meaning of the FCRA.

73. Defendant is prohibited under the FCRA from discriminating against Plaintiff because of his handicap with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

74. Defendant violated the FCRA by terminating and discriminating against Plaintiff based on his handicap.

75. Defendant intentionally discriminated against Plaintiff on the basis of his handicap.

76. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the FCRA, Plaintiff has suffered lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

77. Defendant's unlawful conduct in violation of the FCRA was outrageous, malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling him to an award of exemplary and or punitive damages.

## Count V: Retaliation in Violation of the FCRA

78. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1-46 above.

79. At all times relevant to this action, Plaintiff was a qualified employee with a handicap under the FCRA.

80. Defendant intentionally retaliated against Plaintiff for engaging in protected activity.

81. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the FCRA, Plaintiff has suffered lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

82. Defendant's unlawful conduct in violation of the FCRA was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling him to an award of exemplary and/or punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, requests this Honorable Court:

a) Enter judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional

distress damages, in the amount to be proved at trial, punitive damages, and prejudgment interest thereon;

      b)      Granting Plaintiff costs and an award of reasonable attorneys' fees (including expert witness fees); and

      c)      Award any other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all triable issues herein.

Respectfully Submitted:

***/s/ Gary James Martoccio***
Gary James Martoccio
Florida Bar No. 99040
**Spielberger Law Group**
4890 W. Kennedy Blvd.
Suite 950
Tampa, Florida 33609
T: (800) 965-1570
F: (866) 580-7499
Gary.Martoccio@spielbergerlawgroup.com

*Counsel for Plaintiff*